**CALCAGNI & KANEFSKY, LLP**
Eric T. Kanefsky
One Newark Center
1085 Raymond Boulevard, 14th Floor
Newark, New Jersey 07102
Telephone: (862) 397-1796
Facsimile: (862) 902-5458
eric@ck-litigation.com

*Local Counsel for Proposed Lead Plaintiff*
*Wayne County Employees' Retirement System*
[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DEFINED BENEFIT PLAN OF THE MID-JERSEY TRUCKING INDUSTRY AND TEAMSTERS LOCAL 701 PENSION AND ANNUITY FUND, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PAYPAL HOLDINGS, INC., DANIEL SCHULMAN, and JOHN RAINEY<br><br>Defendants. | No. 3:22-cv-05864-GC-LHG<br>Hon. Georgette Castner<br><br>**CLASS ACTION**<br><br>**MOTION DAY: January 3, 2023** |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION <u>OF LEAD COUNSEL</u>**

# **TABLE OF CONENTS**

PRELIMINARY STATEMENT ...............................................................................1

SUMMARY OF ALLEGED FACTS ........................................................................3

ARGUMENT .............................................................................................................5

    I. WCERS Should Be Appointed Lead Plaintiff .................................................6

        A. WCERS Has A Significant Financial Interest In The Relief Sought
           By The Class ...............................................................................................6

        B. WCERS Satisfies The Requirements Of Rule 23 ......................................8

    II. The Court Should Approve WCERS's Selection Of Lead Counsel .............11

CONCLUSION ........................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bucks Cnty. Emps. Ret. Fund. v. Newell Brands, Inc.*,
2018 WL 4629571 (D.N.J. Sept. 27, 2018) ............................................................9

*Christian v. BT Group PLC*,
2017 WL 3705804 (D.N.J. Aug. 28, 2017) .............................................................7

*City of Roseville Employees' Ret. Sys. v. Horizon Lines Inc.*,
2009 WL 1811067 (D. Del. June 18, 2009)............................................................7

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................................2

*In re Cendant Corporation Litigation*, 264 F.3d 201 (3d Cir. 2002) .......................6

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2021 WL 4272654 (D.N.J Sept. 21, 2021) .............................................................7

*Kanefsky v. Honeywell Int'l Inc.*,
2019 WL 936662 (D.N.J. Feb. 26, 2019) ...........................................................8, 9

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................ passim

17 C.F.R. § 240.10b-5 ...................................................................................................1

**Other Authorities**

1995 U.S.C.C.A.N. 730 (1995) ...................................................................................10

H.R. Conf. Rep. No. 104-369 (1995) .....................................................................2, 10

S. Rep. No. 104-98 (1995)............................................................................................2

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................2, 8, 9

Wayne County Employees' Retirement System ("WCERS") respectfully submits this memorandum of law in support of its motion: (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of its selection of Bleichmar Fonti & Auld LLP ("BFA") as Lead Counsel for the Class; and (3) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The above-captioned securities class action alleges that PayPal Holdings, Inc. ("PayPal" or the "Company") and certain of its senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Specifically, between February 3, 2021 and February 1, 2022, inclusive ("the Class Period"), Defendants allegedly misrepresented and concealed that PayPal's most important publicly reported customer growth metric, Net New Active accounts ("NNAs"), was inflated by millions of fraudulent accounts created only to take advantage of cash incentive campaigns that the Company implemented in an attempt to drive up growth.

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, WCERS believes it is the "most adequate plaintiff" by virtue of, among other things, the $637,385 in losses as calculated under a first-in, first-out basis ("FIFO"), and $585,825 in losses as calculated under a last-in, first-out basis ("LIFO") that it incurred on its investments in PayPal common stock during the Class Period, as assessed under the Supreme Court's ruling in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).

WCERS also satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure because its claims are typical of all members of the Class and it will fairly and adequately represent the Class. Indeed, WCERS is more than adequate; it is precisely the type of investor that Congress intended to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995); S. Rep. No. 104-98, at *6 (1995). As a sophisticated institution, WCERS has significant experience serving in a fiduciary capacity, supervising the work of outside counsel, and can leverage its resources to help maximize the recovery for the Class. WCERS also has

prior experience serving as Lead Plaintiff and a class representative in securities class actions, recovering tens of millions of dollars for investors. Further, WCERS fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake the responsibilities entailed in acting as Lead Plaintiff to guarantee vigorous prosecution of this action. *See* Declaration of Eric T. Kanefsky ("Kanefsky Decl."), Ex. A.

Finally, WCERS has selected BFA, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class. Accordingly, WCERS respectfully requests that the Court appoint it Lead Plaintiff and otherwise grant its motion.

## SUMMARY OF ALLEGED FACTS

PayPal operates a digital platform for consumers and merchants to make and receive online payments. ¶2.[1] The Company derives more than 90% of its revenue from the fees that it charges on payment transactions. *Id.* As the COVID-19 pandemic forced the global economy to move largely online, PayPal thrived. Indeed, for fiscal year 2020, PayPal reported a record 73 million NNAs. ¶28. NNA's were important to investors because, in theory, the more accounts PayPal

---

[1] All citations to ¶__ refer to the complaint filed in the above-captioned action, ECF No. 1.

had on its platform, the more opportunities the Company had to earn transaction fees. ¶3.

As the global economy began to emerge from the COVID-19 pandemic in 2021, PayPal faced pressure to show investors that it could continue to grow its NNAs. ¶29. Compounding the pressure, at the same time, PayPal was losing a large portion of its historical business with E-bay. ¶4. In an attempt to counteract these headwinds, PayPal began to vigorously employ aggressive marketing campaigns, including providing users with $10 or more to open a new account on the Company's platform. ¶30.

As alleged, throughout the Class Period, Defendants consistently touted its growth in NNAs, which it attributed to increased customer engagement and improved customer experiences. For example, on February 11, 2021, PayPal told investors that "we believe we can grow [from] 377 million to 750 million active accounts on our platform [by 2025] and the reason we feel so confident about that is that we are seeing engagement levels increase dramatically throughout our base, especially with the new products that we've put out." ¶¶34, 39. Defendants also represented to investors that acquiring "low quality" NNAs "is not something that we want to chase as a company, and we can certainly go out and spend money on customer acquisition and get very low value net new actives to inflate or pump up that number, but that's not the right economic decision for us longer term." ¶40.

4

These statements were materially false and misleading. On February 1, 2022, PayPal admitted that "in connection with the increased use of incentive campaigns throughout 2021, we identified 4.5 million accounts that we believe were illegitimately created" to take advantage of the cash account opening incentives. ¶42. Further, PayPal disclosed that it "no longer believe[s] that the 750 million medium-term account aspiration we set last year, is appropriate." *Id.* Additionally, the Company disclosed that it "leaned into incentivized customer acquisition tactics to a much greater extent than we ever have in our history" and admitted that while "these programs are very successful in generating account creation, these customers have lower engagement and a higher propensity to churn, and have not met our required level of return." ¶44. On this news, the price of PayPal's common stock fell $43.23 per share, or 25%, to close at $132.57 per share. ¶46.

## ARGUMENT

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On October 4, 2022, plaintiff Defined Benefit Plan of the Mid-Jersey Trucking Industry and Teamsters Local 701 Pension and Annuity Fund, ("Local 701") filed a securities class action against PayPal and certain of its senior executives in this District alleging that Defendants defrauded investors during the period of February 3, 2021

to February 1, 2022, inclusive. *See* ECF No. 1. On the same day, counsel for Local 701 published a notice on *BusinessWire* which alerted investors to the pendency of the action and set the deadline for investors to seek Lead Plaintiff status by December 5, 2022. *See* Kanefsky Decl., Ex. B. Accordingly, WCERS satisfies the PSLRA 60-day requirement through the filing of this motion.

## I.     WCERS SHOULD BE APPOINTED LEAD PLAINTIFF

WCERS respectfully submits that it should be appointed Lead Plaintiff because it believes it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B). When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B).

### A.  WCERS Has A Significant Financial Interest In The Relief Sought By The Class

WCERS should be appointed Lead Plaintiff because it has a significant financial interest in the relief sought by the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). When assessing financial interest, the Third Circuit Court of Appeals considers the following three factors: "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (citations omitted). Since

6

*Cendant*, courts have also considered the number of net shares purchased by the movant (*i.e.*, the difference between the number of shares purchased and sold during the class period) as an indicator of financial interest. *See City of Roseville Employees' Ret. Sys. v. Horizon Lines Inc.*, 2009 WL 1811067, at *1 (D. Del. June 18, 2009).

To determine loss, courts rely on the FIFO and LIFO accounting methods. *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 4272654, at *2 n.4 (D.N.J Sept. 21, 2021) ("Methods like LIFO and first-in, first-out ("FIFO") are used to match securities transactions in order to measure damages."). Certain courts disregard losses resulting from so-called "in-and-out" transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public, when warranted. *See Christian v. BT Group PLC*, 2017 WL 3705804, at *6 (D.N.J. Aug. 28, 2017) (McNulty, J.). This stems from the U.S. Supreme Court's decision in *Dura*, which requires plaintiffs to plead "a causal connection between the material misrepresentation and the loss." *Id.* at *4.

As set forth below, WCERS has a substantial financial interest under each metric:[2]

---

[2] WCERS's PSLRA-required Certification is provided as Exhibit A to the Kanefsky Decl. In addition, a chart setting forth calculations of WCERS's financial interest is provided as Exhibit C to the Kanefsky Decl. WCERS's PSLRA certification and loss calculation provide all the trading information necessary to calculate its

| Shares Purchased | Net Shares Purchased | Net Expenditures | FIFO Loss | LIFO Loss | Dura Loss (FIFO) | Dura Loss (LIFO) |
|---|---|---|---|---|---|---|
| 6,930 | 6,745 | $1,382,034 | $637,385 | $585,825 | $637,385 | $585,825 |

Accordingly, WCERS has a significant financial interest in the relief sought by the Class and respectfully submits that it is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### B. WCERS Satisfies The Requirements Of Rule 23

In addition to possessing a significant financial interest in the outcome of the litigation, WCERS otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, the movant need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements. *See Kanefsky v. Honeywell Int'l Inc.*, 2019 WL 936662, at *2 (D.N.J. Feb. 26, 2019) ("To satisfy the requirements of Rule 23, a prospective lead plaintiff need only make an initial showing of typicality and adequacy."). Here, WCERS satisfies both requirements.

WCERS's claims are typical of the claims of other purchasers of PayPal stock. "Typicality is established when the claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if it is based on the same legal theory." *Id.* Here, WCERS's and all other class members'

---

financial interest under all possible metrics and does not presuppose that there is only one valid methodology.

8

claims arise from the same course of events and their legal arguments to prove Defendants' liability are substantially similar. Like all other Class members, WCERS: (1) purchased PayPal common stock during the Class Period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) was damaged thereby. *See Bucks Cnty. Emps. Ret. Fund. v. Newell Brands, Inc.*, 2018 WL 4629571, at *2 (D.N.J. Sept. 27, 2018) (typicality satisfied when lead plaintiff movant "like other members of the proposed class, seeks to recover the losses it allegedly incurred as a result of Defendants' misrepresentations and omissions").

WCERS likewise satisfies the adequacy requirement of Rule 23. Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the Class." For the Class's interests to be fairly and adequately represented, a Lead Plaintiff movant must demonstrate that it: "(1) has the ability and incentive to represent the claims of the class vigorously; (2) has obtained adequate counsel; and (3) poses no conflict between his claims and the members of the class." *Honeywell*, 2019 WL 936662, at *2 (internal quotations and citations omitted). WCERS satisfies these elements because its substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class's claims. Indeed, WCERS's interests are squarely aligned with those of the other Class members and are not antagonistic in any way. There are no

9

facts to suggest any actual or potential conflict of interest or other antagonism between WCERS and other Class members. Further, WCERS has significant experience serving in a fiduciary capacity in supervising the work of outside counsel and is a sophisticated institutional investor that can commit substantial resources to this litigation.

Indeed, WCERS is precisely the type of large and sophisticated institutional investor that Congress encouraged to act as Lead Plaintiff in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

WCERS has further demonstrated its adequacy through its service as a Lead Plaintiff and a class representative in prior securities class actions, recovering tens of millions of dollars for investors, including a $38 million recovery in *In re Uniti Group Inc. Sec. Litig.*, 4:19-cv-00756 (E.D. Ark.) and a $33 million recovery in *Kin-Yip Chun v. Fluor Corp.*, 3:18-cv-01338 (N.D. Tex.).

Finally, WCERS has demonstrated its adequacy through its selection of BFA as proposed Lead Counsel to represent the Class in this action. As discussed more fully below, BFA is highly qualified and experienced in the area of securities class

action litigation and has repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

## II. THE COURT SHOULD APPROVE WCERS'S SELECTION OF LEAD COUNSEL

The Court should approve WCERS's selection of BFA as Lead Counsel on behalf of the Class. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), a movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent, and that choice is not to be disturbed unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

BFA is among the foremost securities class action law firms in the country. BFA's partners have served as Lead and Co-Lead Counsel on behalf of dozens of institutional investors in securities class actions, and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. *See* Kanefsky Decl. Ex. D (BFA firm resume). The firm's recent matters include a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharms. Indus. Ltd.*, No. 3:17-cv-00558 (D. Conn.) and a $129 million resolution for the benefit of the class in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No. 3:19-cv-04744 (N.D. Cal.). Previously, BFA secured a $234 million resolution for the benefit of the class in *In re MF Global Holdings Sec. Litig.*, No. 11-cv-07866 (S.D.N.Y. July 15, 2016), a $120 million recovery in *Freedman v. Weatherford Int'l, Ltd.*, No. 12-cv-02121

(S.D.N.Y. Nov. 4, 2015), and a $219 million resolution in *In re Genworth Fin. Inc. Sec. Litig.*, No. 14-cv-00682 (E.D. Va. Sept. 26, 2016), which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia.

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve WCERS's selection of BFA as Lead Counsel for the Class.

## CONCLUSION

WCERS respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve its selection of BFA as Lead Counsel for the Class; and (3) grant any such other relief as the Court may deem just and proper.

DATED: December 5, 2022

*/s/ Eric T. Kanefsky*
**CALCAGNI & KANEFSKY, LLP**
Eric T. Kanefsky
One Newark Center
1085 Raymond Boulevard, 14th Floor
Newark, New Jersey 07102
Telephone: (862) 397-1796
Facsimile: (862) 902-5458
eric@ck-litigation.com

*Local Counsel for Proposed Lead Plaintiff Wayne County Employees' Retirement System*

12

**BLEICHMAR FONTI & AULD LLP**
Javier Bleichmar (*pro hac vice* forthcoming)
Nancy A. Kulesa (*pro hac vice* forthcoming)
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com
nkulesa@bfalaw.com

*Counsel for Proposed Lead Plaintiff Wayne County Employees' Retirement System, and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of December 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Eric T. Kanefsky*
Eric T. Kanefsky