**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

**IN RE PAYPAL HOLDINGS INC.**                    **CIVIL ACTION NUMBER:**

**SECURITIES LITIGATION**                         **22-cv-05864-RK-JBD**

                                                  **TELECONFERENCE**
_____

        Clarkson S. Fisher Building & U.S. Courthouse
        402 East State Street
        Trenton, New Jersey  08608
        May 31, 2023
        Commencing at 10:30 a.m.

**B E F O R E:**                    **THE HONORABLE ROBERT KIRSCH,**
                                    **UNITED STATES DISTRICT JUDGE**

**A P P E A R A N C E S (CONTINUED ON PAGE 2):**

        SEEGER WEISS LLP
        BY:  CHRISTOPHER A. SEEGER, ESQUIRE
             MAX KELLY, ESQUIRE
        55 CHALLENGER ROAD
        6TH FLOOR
        RIDGEFIELD PARK, NJ  07660
        For the Plaintiff

        LABATON SUCHAROW LLP
        BY:  CAROL C. VILLEGAS, ESQUIRE
             JAKE BISSELL-LINSK, ESQUIRE
        140 BROADWAY
        NEW YORK, NY  10005
        For the Plaintiffs


            Carol Farrell, Official Court Reporter
                 cfarrell.crr@gmail.com
                     856-318-6100

    Proceedings recorded by mechanical stenography; transcript
          produced by computer-aided transcription.

*United States District Court*
*District of New Jersey*

**A P P E A R A N C E S (Continued):**

ROBBINS GELLER RUDMAN & DOWD LLP
BY:   MATTHEW I. ALPERT, ESQUIRE
      TOR GRONBORG, ESQUIRE
      PATTON L. JOHNSON, ESQUIRE
655 WEST BROADWAY, SUITE 1900
SAN DIEGO, CA  92101
AND
BY:   JACOB G. GELMAN, ESQUIRE
POST MONTGOMERY CENTER
ONE MONTGOMERY STREET, SUITE 1800
SAN FRANCISCO, CA  94104
For the Plaintiffs


ARCHER & GREINER, P.C.
BY:   MAUREEN T. COGHLAN, ESQUIRE
1025 LAUREL OAK ROAD
VOORHEES, NJ  08043
For the Paypal Defendants


SHEARMAN & STERLING LLP
BY:   ADAM HAKKI, ESQUIRE
      LYLE ROBERTS, ESQUIRE
599 LEXINGTON AVENUE
NEW YORK, NJ  10022-6069
For the Paypal Defendants

(PROCEEDINGS held in open court before The Honorable Robert Kirsch, United States District Judge, at 10:30 a.m.)

THE COURT:  In re PayPal Holdings, Inc., 22-05864.

This is Robert Kirsch.  Counsel, your appearances, please.

MR. SEEGER:  Good morning, Your Honor.  This is Chris Seeger.

By the way, congratulations on your appointment to the bench.

THE COURT:  I appreciate that, Mr. Seeger, and what a welcome mat you've given me.

MR. SEEGER:  You've got a bunch of people on this phone call.

I think to save Your Honor a little time, I will introduce everyone on the plaintiffs' side.

THE COURT:  Please.

MR. SEEGER:  All right.  So I'll start with my firm. You've got me, Chris Seeger, and Max Kelly from my firm is on.

From the Labaton firm, we have Carol Villegas who will probably be addressing the Court mostly this morning on any issues regarding scheduling.

THE COURT:  Good morning, Carol.

MS. VILLEGAS:  Good morning, Your Honor.

MR. SEEGER:  With Carol is Jake Bissell-Linsk who is also from Labaton.

And then we have a few folks from the Robbins Geller firm.  We've got Matthew Alpert, Tor Gronborg, Patton Johnson, and Jacob Gelman.  And I think most of us are going to be quiet, other than maybe just to say good morning.

THE COURT:  Okay.  Thank you.

MS. COGHLAN:  Good morning, Your Honor.  This is Maureen Coghlan of Archer & Greiner on behalf of the PayPal defendants.

With me are my esteemed co-counsel from Shearman & Sterling, Adam Hakki and Lyle Roberts.  And Mr. Hakki will be speaking on behalf of the PayPal defendants today.

THE COURT:  All right.  Good morning to all.  And I appreciate everybody being on time.

As you might expect, I am trying to get up to speed which is a bit of a herculean task.  I'm literally still unpacking the boxes.  But I saw this complaint, which is voluminous, and I wanted to get ahold of all of you before we get going.

I haven't had an opportunity yet, but I expect to over the next several days, to put out my judicial preferences, and one of the foremost preferences will be that I'm going to be requiring a submission in writing before any motions to dismiss are filed.

When I practice federal civil law -- I was a state court judge for a long time.  Before then, I was in the federal

system, and there seems to have been a (c) change in terms of motions to dismiss under Rule 12 that are sort of new to me, in the sense of most of the motions to dismiss that I was familiar with were really sort of qualified immunity, sort of straight-line adjudicable things, and now it's much more routine, and as a result of that, if every case got a motion to dismiss -- well, I don't have to finish the math -- it would explain why there is an incredible delay -- two, three, four years.  I've got a settlement conference tomorrow in a case that's 2010 -- and I didn't misspeak -- that's 2010.

So I'm trying to get ahead of the curve here, and so my first statement is, generally speaking, I'm not going to stand in your way, counsel.  65 pages sounds an awful lot.  I'm not going to repeat the snarky comment of Judge Politan when I asked for a brief extension 20-something years ago.  He said, "Well, you can do that, Robert, but I stop reading at Page 15."

MR. SEEGER:  I remember those statements from him, Judge.

THE COURT:  Yes.  So I love lawyers.  I come from legal stock.  65 pages sounds an awful lot to me.  That's my first observation.

If, as time goes on, I think that people are taking advantage, I'll rein it in.  I'm too new and inexperienced right now to do it, but I'm experienced enough to know that sounds like a lot, but we'll see.

Having said that, here's what we are going to do, though. The motion's not going to be filed. First, I want the parties to confer. Have you already, in terms of trying to determine whether some of the alleged pleading defects can be cured?

MS. VILLEGAS: Your Honor, this is Carol Villegas from Labaton, and I'm happy to answer that question, but I think the best way to start is to explain why perhaps our complaint is longer than maybe what you're used to seeing on a Rule 18 standard.

We have to plead our complaint pursuant to the Private Securities Litigation format -- excuse me just a minute -- which requires a heightened pleading standard. So we don't just have to satisfy Rule 8. We have to satisfy Rule 9(b) for fraud, and then, on top of that, we have to satisfy the heightened pleading standard of the PSLRA, which means we have to plead everything with particularity -- the false and misleading statements, the who, what, where, when, and why, and that the statements were made with acknowledged scienter or recklessness. And that requires providing the Court with a lot of information. Usually there's confidential witnesses that are involved to try to help with the pleading standard. And that's sort of why the complaint is as voluminous as it is, more so than, say, you know, an employment discrimination case, for example.

THE COURT:  It was obvious this was not a slip and fall.

MS. VILLEGAS:  Thank you, Your Honor.

So that's the reason why.  And, you know, the reason why the deadlines get pushed out sometimes in these cases and perhaps the briefing schedule is a little longer and the pages are a little bit longer is because, you know, there is a lot of law surrounding this practice, and it's the highest pleading standard for any case, you know, in the nation, and so I think that a lot of work goes into crafting the complaints, and a lot of work goes into the motion to dismiss, opposition and reply.

And I don't want to speak for defense counsel, but I can almost assure you that there is nothing they will concede is false and misleading and made with the knowledge required in these cases, and so my position is that, regardless of whether we do meet and confer, this is a case that's going to need to be fully briefed.

THE COURT:  Well, so first of all, I didn't make any representation or observation with regard to the length of the complaint.  I do know the heightened pleading standards on cases like this.

My observation simply went on the motion to dismiss and the volume of pages with regard to that and the reply seem a lot to me.

The other thing I want to say is, while I didn't study

your 100-something-paged complaint, and I think it is over 100 pages, regardless, that leads me to think that perhaps some of the concerns or the general concerns of defendants with regard to a lack of particularity or specificity might have been already addressed; else why would you write 100-something-paged complaint?

So I come back to what I said before. Did the parties meet and confer in the attempts of perhaps streamlining what a motion to dismiss might look like or -- or perhaps the plaintiffs might come to the conclusion, oh, maybe we need to shore this up and we can obviate point 78 on the defense side on a motion to dismiss. I'm getting the sense that you didn't meet and confer.

MS. VILLEGAS: We have not met and conferred on this point, Your Honor.

THE COURT: Okay. And now I'm going to ask defense counsel. And who is speaking on behalf of the defendant?

MR. HAKKI: Yeah, good morning, Your Honor. It's Adam Hakki, Shearman & Sterling, for the defendant.

THE COURT: Adam, did anything I say make any sense? Is it, from your vantage point, prudent to speak to plaintiffs' counsel that some of this might be alleviated, or no?

MR. HAKKI: Your Honor, needless to say, we will proceed in whatever way the Court thinks best.

I think it does make sense -- I will say that,

however, you know, as you know, and as I think was well explained by plaintiffs' counsel, motions to dismiss in federal securities cases are a very unique animal. The statute is set up that way. There is this very heightened pleading burden. There is an automatic stay of discovery, pending resolution of the motion to dismiss. It's all set up to sort of treat the motion to dismiss as a seminal event in the case where, you know, many, many, many cases are resolved at that stage by the Court's decision. And it's in part for that reason, and there is lots of different ways -- and I'm not going to get into the merits, and I think we're very aligned in this case, thankfully, on the plaintiffs' and the defense side as to how this should proceed.

You know, there are multiple arguments -- scienter, particularity, et cetera, et cetera -- that one makes in these motions that have to be made by statute on a statement-by-statement basis. And, you know, needless to say, we think we have, you know, clear and good arguments on each of those statements.

This is not distinct from other, you know, large securities cases in that way, and there's certain ways these things tend to get handled, which is we try to file one brief on behalf of all defendants, which we're proposing to do here. We're not looking to make it long for long's sake. The idea is to make it as helpful and clear as possible to the Court, with

brevity in my mind, but also we've got to march through 50 sets of statements and 141 pages of allegations in a way that allows the Court to, you know, address these issues in a statutory mandated way, comprehensively, with the best we have in terms of explaining it.

So that's sort of the reason -- I'm getting to the pages, and I'll come back to conferring -- that we thought 65 pages would be appropriate here. We cited in our letter a similar case where Judge Castner recently, who previously had this case, you know, granted the same length of pages to the parties, and it's really again designed to sort of have, in one set of papers, a comprehensive look at each of these legible statements with respect to each of the elements that the Court is required to consider under the PSLRA.

As it relates to meeting and conferring, like I said, if the Court directs us to do that, we would of course do it. I share plaintiffs' counsel's pessimism that that's likely to resolve much.

You know, the defects that we see in the pleadings sort of cut across -- you know, they are common defects we believe that will cut across many of these statements. I think the plaintiffs will likely reach the same conclusion from their perspective. And that, you know, this is -- obviously, they have already amended their complaint once, and I worry, just as a case management matter, Your Honor, that we would spend time

on that, and despite good-faith efforts to work together, in any meaningful way, we will have just lost time.

THE COURT:  Understood.  So I will defer to counsel on this.

Going forward, I don't find it terribly -- I like Judge Castner very much.  She's a new colleague of mine.  I think she's very smart and is very capable.  I don't find it terribly compelling when I'm cited to another District Court with regard to something as mundane and pedestrian as the extensions on briefs.

Now, if one of my colleagues were to have written an opinion on an issue which is joined here, well, that could be instructive in some respect, but you need not tell me that Judge Shipp or Judge Hayden granted an extension of X, Y, Z. It's not going to mean a whole lot to me.  So just going forward, you should know that.

I will defer to you, on both sides, if you don't think it's going to be terribly helpful.

Here is how we're going to do this.

When the entire motion is joined in a couple of months, then you will file the entirety of the submissions.  In that time period, you will see that I will -- I hope at the end of this week but certainly next week -- I will put forth my own judicial preferences, which I don't know necessarily will affect you, to the exception of a courtesy copy, because

undoubtedly, I imagine your attachments to the briefs are going to be in excess of 50 pages.  So you'll provide a courtesy copy, but you don't have to worry about that since it's going to be some period of time until the entire motion is joined.  So don't file it until everything is in, and then you can file it in one fell swoop.  Okay?

MR. HAKKI:  Yes, Your Honor.

MS. VILLEGAS:  Yes, Your Honor.

THE COURT:  Any questions?  Any questions, folks?

MR. SEEGER:  No, Your Honor, not from the plaintiffs. I think we got the -- we have your instructions.

THE COURT:  Okay.

MR. HAKKI:  May I ask a question, Your Honor?  This is Adam Hakki.

THE COURT:  Sure.

MR. HAKKI:  I think this was what you were conveying but I just want to be -- make sure to be precise.

We had proposed, though, the page limit -- page limits for the three briefs, as well as a schedule, and I take it that that's granted.  And, obviously, we will review your procedures and, you know, that is, to the extent applicable, I guess.  Is that what you intended, Your Honor?

THE COURT:  That's correct.  I persist in my belief that 65 pages sounds a bit much, but I can't wait to read every word of it once it comes in.

(Laughter.)

MR. HAKKI:  Thank you, Your Honor.  And you have our commitment that if we reach a conclusion that we can bring this in helpful to the Court in less than 65, you will get less than 65.  We appreciate it.

THE COURT:  No worries.

And, obviously, unless this becomes sort of obnoxiously protracted, since the motion is not filed, if you need to deviate, please submit a notice to me that's filed electronically, hey, we went on vacation or this took longer, et cetera, we need another two weeks.  That's not going to bother me, as long as it's not filed.

Having said that, if this thing goes out into the stratosphere of time, then I'm going to have to get involved again, which I don't think is likely.

MR. HAKKI:  Understood.

THE COURT:  Okay?

MR. HAKKI:  Yes, Your Honor.

THE COURT:  Excellent.  Well, nice to make the acquaintance of everybody.

MR. HAKKI:  And yes, thanks for your instructions too, as well, Your Honor.  We appreciate that.

THE COURT:  Of course.  Okay, take good care, folks. Thanks.

(The proceedings concluded at 10:50 a.m.)

- - - - - - - - - - - - - - - -

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/S/ Carol Farrell, NJ-CRCR, FCRR, RDR, CRR, RMR, CRC, CRI*
*Court Reporter/Transcriber*

*June 11, 2023*
     *Date*

*United States District Court*
*District of New Jersey*