**SEEGERWEISS** LLP

NEW YORK • NEW JERSEY • PHILADELPHIA • NEWTON, MA

**VIA ECF**                                                                                     April 7, 2025

Honorable Robert A. Kirsch, U.S.D.J.
United States District Court, District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

        **Re:**       ***In re PayPal Holdings Inc. Securities Litigation,*** *Case No.: 3:22-cv-05864*
                   **Response to Defendants' Request for Pre-Motion Conference**

Dear Judge Kirsch:

Lead Plaintiff Caisse de dépôt et placement du Québec and plaintiff Public Employees Retirement Association of New Mexico submit this letter in response to Defendants' Request for Pre-Motion Conference (ECF 91) ("Letter").[1]  In accordance with Your Honor's Rules and Procedures, Plaintiffs certify that the parties, through their counsel, met and conferred on April 1, 2025, and, as stated herein, Plaintiffs object to Defendants' requested relief.

On March 17, 2025, following the Court's allowance to amend the complaint, Plaintiffs timely filed the First Amended Complaint for Violations of the Federal Securities Laws (ECF 88) ("FAC").  In accordance with the Court's guidance in its motion to dismiss opinion (ECF 86) ("Opinion"), Plaintiffs amended their theory of liability and buttressed the supporting allegations, including by modifying and adding alleged misrepresentations, admissions, contextual facts, reports from stock analysts regarding materiality, and allegations of Defendants' knowledge and reckless disregard.  As a result, the FAC more than sufficiently pleads Defendants' violations of §§10(b), 20(a), and 20A of the Securities and Exchange Act of 1934.

As set forth in the FAC, prior to the Class Period, PayPal had benefitted from a period of significant growth in net new actives ("NNAs") fueled by the Covid pandemic.  Heading into 2021, Defendants reassured investors that they could maintain this NNA growth and continue bringing on active users that would enable PayPal to become America's first "Super App," which required "massive scale."  ¶¶2, 27-28.  In order to meet these expectations, and keep PayPal's stock price from sinking, Defendants embarked on an intentional strategy to inflate its reported NNAs.  ¶2.  Specifically, as they later admitted, Defendants "leaned into" cash incentives to an unprecedented level, in order to temporarily drive up NNAs with low-value and fraudulent accounts.  ¶¶50-66.

Defendants falsely told investors that PayPal was not "chasing a low-value, net new active that maybe pumps up numbers and the optics look good," and was instead targeting customers that are "going to contribute to the PayPal platform over time."  ¶40.  And investors were misleadingly told that the new accounts PayPal had added were "high-quality net new actives" and the "most engaged cohorts that we've ever seen."  ¶¶38, 41.  Defendants repeated these statements to investors throughout the Class Period, assuring them that "we can certainly go out and spend

---

[1]  Defendants are PayPal Holdings, Inc. ("PayPal" or the "Company"), Daniel Schulman, John Rainey, and Jonathan Auerbach.  All "¶_" or "¶¶__" references are to paragraphs in the FAC.

money on customer acquisition and get very low value net new actives to inflate or pump up that number, but that's not the right economic decision for us longer term." ¶48.

These statements were false and misleading by Defendants' own admissions. ¶¶50-66. On February 1, 2022, Defendants disclosed that PayPal had in fact "pursued a strategy to retain those customers most likely to churn as well as attract many more new customers." ¶52. Defendants admitted that "[t]hese programs are very successful in generating account creation. But overall, these customers have lower engagement and a higher propensity to churn." *Id.* Defendants specified that they were no longer going to "throw away money to try and engage somebody in our base that clearly came in for 1 or 2 transactions and us trying to incent them to stay with us by offering them $5, $10, $20 does not meet our ROI criteria." ¶64. Defendants then quantified the extent to which they had actually been chasing low-value NNAs, admitting that at least "20 million incremental one-and-done customers" – approximately half of all the reported NNAs for 2021 – "were never engaged" and expected to leave PayPal in 2022. ¶¶8, 55. Ultimately, PayPal ended 2022 with 40 million fewer NNAs than they reported having in 2021. ¶¶50, 65 n.2.

Defendants also admitted that they had identified at least 4.5 million accounts that were illegitimately created as a result of the cash incentive programs, with "about half . . . created in quarters one through three" of 2021. ¶57. Former PayPal employees corroborate that millions of illegitimate and fraudulent NNAs tied to the incentive programs had already been identified by October 2021, rendering Defendants' November 8, 2021 statements boasting of 13.3 million NNAs false and misleading. ¶¶46, 124-126, 141.

Investors were stunned by these disclosures, particularly because they followed so close to Defendants' prior false statements. On February 2, 2022, PayPal's stock price immediately fell $43.23 per share, the largest drop in Company history. ¶¶9, 56. The stock continued to fall, and by the end of February 3, 2022, it was down nearly 30% wiping out more than $58 billion of PayPal's market capitalization. ¶¶9, 61. Confirming the accuracy of Plaintiffs' allegations, one stock analyst stated "[w]e are now learning in hindsight that the unsustainably high and record level of new account growth throughout 2020 and 2021 consisted of a lot of 'one and done' and low-volume users." ¶83.

Given these well-plead allegations and irrefutable facts, Defendants' resort to self-serving descriptions of the FAC, claiming it does not add anything "of substance," that the statements are "effectively the same," or the allegations are not "adequately corrected." Letter at 2-3. But they undermine themselves with attempts to distinguish new facts and new statements. *Id.* Yes, the FAC is "significantly shorter," but this is obviously because, adhering to the Court's Opinion, Plaintiffs kept the most salient facts and amended the basis for its claim of securities fraud. And Defendants try to ignore other added allegations, like the admissions they fail to grapple with in their own Letter. Letter at 3 n.1; *see, e.g.*, *new allegations in the FAC*, ¶55 (collecting data on each incentive campaign); ¶¶67-92 (analyst reports); ¶100 (segmentation model); ¶103 (transactional data); ¶104 (procedures for material information and detecting fraud).

Challenging the allegations of falsity, Defendants claim that Plaintiffs "do not 'provide the necessary "who, what, when, where and how" evidencing PayPal leadership's **knowledge**.'" Letter at 2. But the relevant pleading standard is the "who, what, when, where and how" *a statement* is false or misleading. *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,

70 F.4th 668, 680 (3d Cir. 2023) ("[T]he complaint must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity."). By identifying for each statement who made it, what was said, when it was said, where it was said, and how it was misleading, Plaintiffs have easily met this standard. ¶¶29-49. Likewise, Defendants cannot refute that the allegations regarding how their statements were false are not plausible; after all, Defendants' own admissions in February 2022 directly contradict what they told investors during the Class Period. *Compare, e.g.,* ¶40, *with* ¶55, *and* ¶38, *with* ¶52. Moreover, Plaintiffs provide significant and specific facts regarding the materiality of Defendants' false and misleading statements, including analyst questions/commentary, Defendants' own statements and admissions, and the massive stock price reaction to those admissions. ¶¶22-27, 29-34, 36, 38-41, 43-44, 46-48, 50-92.

While allegations of the Defendants' knowledge of the inaccuracy of their statements is not a prerequisite for pleading falsity, it is relevant to the separate element of scienter. But contrary to Defendants' argument, Plaintiffs do not need to provide direct evidence of, or a direct link to, Defendants' knowledge that their statements were false. Rather, under the PSLRA "[t]he inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong *inference of scienter*," which can be shown with """circumstantial evidence of *either* reckless or conscious behavior.""" *In re Coinbase Glob., Inc. Sec. Litig.*, 2024 WL 4053009, at *15 (D.N.J. Sept. 5, 2024). As the Supreme Court instructs, "'[t]he inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the "smoking-gun" genre, or even the most plausible of competing inferences.'" *Institutional Invs. Grp. v. Avaya, In*c., 564 F.3d 242, 267 (3d Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007)).

As stated in the FAC, Defendants' scienter is apparent from their denials and admissions. ¶¶95-98; *see Avaya*, 564 F.3d at 269 ("McGuire did not simply make statements inconsistent with the existence of widespread and unusual discounting; he explicitly denied the existence of such discounting in response to repeated questions about pricing by analysts."). Defendants also claimed they knew or had access to information contradicting their public statements (¶¶99-105), and former employees corroborate Defendants' approval of the cash incentives and knowledge of illegitimate accounts (¶¶106-141). Plaintiffs are also awarded the core operations inference because these matters are "'core matters' of central importance to [PayPal] and its principal executives." *Avaya*, 564 F.3d at 268. In addition, Plaintiffs provide facts that Defendants acted on their motive and opportunity to commit securities fraud by selling $170 million worth of PayPal stock all while making misrepresentations to investors. ¶¶142-156. Defendants' Letter is notable only for the fact that it so conspicuously ignores these allegations, which more than sufficiently allege scienter as the allegations are cogent and "'at least as compelling as any opposing inference'" offered by Defendants. *Avaya*, 564 F.3d at 267.

Defendants' Letter provides no basis for dismissal under Rule 12(b)(6) on the elements of falsity or scienter. Defendants also concede, by their silence, that Plaintiffs have adequately pleaded the remaining elements of their claims, including reliance, loss causation, damages, violations of §20(a) (control), and violations of §20A (contemporaneous trading). Accordingly, Defendants' request for a second motion to dismiss should be denied.

Respectfully submitted,

PAGE 4

**SEEGER WEISS LLP**
CHRISTOPHER A. SEEGER
CHRISTOPHER L. AYERS
JENNIFER R. SCULLION

*/s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER
55 Challenger Road, 6th
Floor Ridgefield Park, NJ
07660 Telephone:  212/584-
0700 212/584-0799 (fax)
cseeger@seegerweiss.com
cayers@seegerweiss.com
jscullion@seegerweiss.com

*Liaison Counsel*

**LABATON KELLER SUCHAROW LLP**
CAROL C. VILLEGAS
JAKE BISSELL-LINSK
LISA STREJLAU
DANIELLE IZZO
140 Broadway, 34th Floor
New York, NY  10005
Telephone: 212/907-0700
212/818-0477 (fax)
cvillegas@labaton.com
jbissell-linsk@labaton.com
lstrejlau@labaton.com
dizzo@labaton.com

*Counsel for Lead Plaintiff and Co-Lead
Counsel for the Class*

**ROBBINS GELLER
RUDMAN & DOWD LLP**
TOR GRONBORG
MATTHEW I. ALPERT
PATTON L. JOHNSON
655 West Broadway, Suite
1900 San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
malpert@rgrdlaw.com
pjohnson@rgrdlaw.com

PAGE 5

*Counsel for PERA and Co-Lead Counsel for
the Class*

cc: All Counsel (via ECF)

55 Challenger Road • Ridgefield Park, NJ 07660 • T: 973.639.9100 • F: 973.639.9393 • seegerweiss.com