**ARCHER & GREINER, P.C.**
Maureen T. Coghlan
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (856) 795-2121
Fax: (856) 795-0574
mcoghlan@archerlaw.com

**ALLEN OVERY SHEARMAN
STERLING US LLP**
Adam S. Hakki (*pro hac vice*)
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Adam.hakki@aoshearman.com

Lyle Roberts (*pro hac vice*)
George Anhang (*pro hac vice*)
1101 New York Avenue NW
Washington, DC 20005
Telephone: (202) 683-3800
lyle.roberts@aoshearman.com
george.anhang@aoshearman.com

*Counsel for Defendants PayPal Holdings, Inc.,
Daniel Schulman, John Rainey, and Jonathan Auerbach*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE PAYPAL HOLDINGS, INC. SECURITIES LITIGATION | Case No. 3:22-cv-05864 (RK) (JTQ)<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 2

I.     Plaintiffs Cannot Relitigate Previously Decided Issues ................................. 2

II.    Plaintiffs' Section 10(b) and Rule 10b-5 Claims Fail to Plead Actionable Misstatements or Omissions. ....................................................... 5

III.   Plaintiffs Fail to Adequately Plead a Strong Inference of Scienter as to Each Defendant and Each Alleged Misstatement. ......................................... 9

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adams Golf, Inc. Securities Litigation*,
  381 F.3d 267 (3d Cir. 2004) ..............................................................................7

*Anderson v. Reliance Standard Life Ins. Co.*,
  2023 WL 8271931 (D.N.J. Nov. 30, 2023) .........................................................4

*Blackbook Cap., Inc. v. Fin. Indus. Regulatory Auth., Inc.*,
  2021 WL 1827268 (D.N.J. May 5, 2021).............................................................4

*Gross v. AT&T Inc.*,
  2021 WL 9803956 (S.D.N.Y. Sept. 27, 2021) ...................................................12

*Institutional Invs. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) ........................................................................10, 11

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
  2012 WL 3779309 (D.N.J. Aug. 29, 2012) .........................................................7

*Palmieri v. Intervet Inc.*,
  2025 WL 1811271 (D.N.J. June 30, 2025)......................................................4, 5

*U. S. ex rel. Petratos v. Genentech Inc.*,
  855 F.3d 481 (3d Cir. 2017) ......................................................................3, 4, 5

*Pue v. N.J. Dep't of Labor*,
  2024 WL 1975387 (D.N.J. May 3, 2024) (Kirsch, J.).........................................3

*In re Suprema Specialties, Inc. Securities Litigation*,
  438 F.3d 256 (3d Cir. 2006) .............................................................................11

*White v. Smiths Detection Inc.*,
  2013 WL 1845072 (D.N.J. April 30, 2013).........................................................5

*Wu v. GSX Techedu Inc.*,
  738 F. Supp. 3d 527 (D.N.J. 2024)..............................................................3, 5, 9

ii

**Statutes**

SEC Exchange Act of 1934

Section 10(b) ...............................................................................................5

**Regulations**

17 C.F.R. § 240.10b-5.......................................................................................5, 10

## PRELIMINARY STATEMENT

Plaintiffs' brief in opposition to Defendants' motion to dismiss (the "Opposition" or "Opp.") further confirms that their Second Amended Complaint ("SAC") is nothing more than a baseless attempt to relitigate decided issues. Plaintiffs fail to show that there are any new factual allegations that could possibly cure the pleading deficiencies identified in the Court's Opinion, or that the handful of "new" alleged misstatements substantively differ from statements the Court already found inactionable. Instead, the Opposition reads as though the Court never dismissed the first amended complaint, or, indeed, decided any issues at all.

Plaintiffs' assertion that the "law of the case" doctrine does not apply to "interlocutory orders" ignores that the Court's Opinion was not an "order" and that courts in this district have repeatedly applied the law of the case doctrine and its "extraordinary circumstances" standard to rulings of law when evaluating amended complaints. And, Plaintiffs do not, and cannot, show that there are any extraordinary circumstances here that would warrant the Court reconsidering its prior rulings.

The Court also should reject Plaintiffs' repeated attempts to evade the Court's previous rulings by wrongfully asserting that Defendants' references to the Court's Opinion in their Motion to Dismiss are somehow "arguments" being raised by Defendants. Plaintiffs cannot escape that these actually are references to the Court's

1

prior binding rulings on the alleged misstatements (including whether they are inactionable puffery and/or opinions).

Finally, Plaintiffs' failure to adequately plead a strong inference that any of Defendants knew, or were severely reckless in not knowing, that their statements were false or misleading (*i.e.*, scienter), provides an independent ground for dismissal. The Opposition makes it clear that, when the Court undertakes a holistic review of the facts properly before it, the non-culpable explanation for Defendants' conduct is far stronger than any inference of fraud.

The SAC should be dismissed with prejudice.

## **ARGUMENT**

### I.      **Plaintiffs Cannot Relitigate Previously Decided Issues**.

Plaintiffs are not entitled to relitigate issues that the Court already decided in its Opinion. MTD at 6-8. The Court made clear that it regarded Plaintiffs as having already amended the original complaint, and that Plaintiffs "should be afforded *another* opportunity to amend their complaint" *only if* they could address "the deficiencies identified by the Court." Opinion at 45-46 (emphasis added). The Court's grant of leave to amend was not an open-ended invitation for Plaintiffs to relitigate the Court's prior decision while relying on their old allegations and arguments. Plaintiffs' efforts to do so violate the Court's narrowly-circumscribed

2

grant of leave to amend.[1] Relatedly, these efforts also are precluded by the law of the case doctrine.

In response, Plaintiffs recite the Third Circuit's unremarkable statement in *Genentech* that "[i]nterlocutory orders . . . remain open to trial court reconsideration, and do not constitute the law of the case." *U. S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) (quoting *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994)). But *Genentech* is inapplicable and cannot be used to justify Plaintiffs' improper attempt to get a second bite at the apple.

*First*, *Genentech* only addressed "interlocutory orders." What is at issue here, however, is an "Opinion" in which this Court made discrete rulings of law on various issues that normally would not be included in an order. *See* Opinion at 26-45. On the same day this Court separately issued an "Order" that granted in full Defendants' motion to dismiss with leave to amend. *See* ECF No.87. Defendants are not raising any arguments about the effect of the Court's dismissal with leave to amend set forth

---

[1] *See, e.g., Pue v. N.J. Dep't of Labor*, 2024 WL 1975387, at *4 (D.N.J. May 3, 2024) (Kirsch, J.) (holding, as to multiple issues, that because "Plaintiff has not alleged any additional facts in his Second Amended Complaint that would change the Court's analysis [in its previous Opinion on the First Amended Complaint] . . . Plaintiff's claims as articulated in the Second Amended Complaint" must be dismissed); *see also, e.g., Wu v. GSX Techedu Inc.*, 738 F. Supp. 3d 527, 555 (D.N.J. 2024) (prior decision that an "alleged misstatement was not pled with sufficient particularity . . . is controlling here, because the Plaintiffs, given the opportunity to re-plead, have not added any new allegations" on the issue).

in that Order. *Genentech* is easily distinguished on that basis.[2]

*Second*, the observation in *Genentech* that interlocutory orders are not the law of the case insofar as they are subject to "reconsideration" provides no help to Plaintiffs because they did not timely move for reconsideration of any of this Court's rulings in the Opinion. Even now they do not ask the Court to "reconsider" any of those prior rulings. A court has the power to reconsider prior rulings only under "extraordinary circumstances" so that it can protect "traditional ideals such as finality, judicial economy[,] and jurisprudential integrity." *Palmieri v. Intervet Inc.*, 2025 WL 1811271, at *5 (D.N.J. June 30, 2025) (citations omitted). And courts in this district have repeatedly applied the "extraordinary circumstances" standard in cases procedurally on all fours with this one–*i.e.*, where (i) a court rules on a 12(b)(6) motion to dismiss, and (ii) a party then attempts to relitigate (sometimes in opposition to a motion to dismiss an amended pleading) discrete issues the court decided in its original opinion.[3] Plaintiffs do not even reference the "extraordinary

---

[2] In *Genentech*, plaintiff argued that a judge's "Order" granting leave to amend constrained a later-assigned judge's ability to grant a motion to dismiss the permitted amended complaint. Unsurprisingly, the Third Circuit rejected plaintiff's overreaching effort to deploy the original "Order" in that manner, and plaintiff did not expressly assert that the law of the case doctrine supported his argument. *Genentech*, 855 F.3d 481 at 493.

[3] *See, e.g. Palmieri,* 2025 WL 1811271, at *5; *Blackbook Cap., Inc. v. Fin. Indus. Regulatory Auth., Inc.*, 2021 WL 1827268, at *3 (D.N.J. May 5, 2021), cited approvingly by this Court in *Anderson v. Reliance Standard Life Ins. Co.*, 2023 WL

circumstances" standard, much less try to satisfy its requirements. That alone requires the SAC to be dismissed.

## II.   Plaintiffs' Section 10(b) and Rule 10b-5 Claims Fail to Plead Actionable Misstatements or Omissions.

Plaintiffs' Opposition fails to explain how any of the allegations pleaded in the SAC cure any of the specific pleading deficiencies the Court identified in its Opinion relating to the alleged misstatements. Instead, Plaintiffs try to obfuscate by, for example, creating new labels to disguise their repleaded statements and straining to argue that the Court did not "directly" cite to or address repleaded statements that the Opinion clearly considered and deemed deficient. *See* Opp. at 9-12 & nn.3-4. Behind Plaintiffs' smoke and mirrors, the Opposition amounts to nothing more than an attempt to relitigate the Court's prior rulings—without identifying any "extraordinary circumstances" that might justify doing so. *See supra* MTD at 6-8.

**Plaintiffs' "NNA acquisition statements" are not new**. Despite not appearing even once in the Opinion or SAC, Plaintiffs' Opposition uses the term "NNA acquisition statement[s]" *15 times* in the span of as many pages. *See* Opp. at 9-24. This made-for-briefing moniker is no more than a desperate effort to disguise

---

8271931, at *5 (D.N.J. Nov. 30, 2023); *White v. Smiths Detection Inc.*, 2013 WL 1845072, at *20 (D.N.J. April 30, 2013); *see also Wu*, 738 F. Supp. 3d at 567 n.44. In *Palmieri*, decided just three months ago, the Court cited the same passage in *Genentech* that Plaintiffs cite here and went on to hold that "reconsideration" was available only in "extraordinary circumstances." 2025 WL 1811271, at *3, *5.

5

the SAC's misstatements as something new that might help Plaintiffs evade the law of the case. But Plaintiffs cannot escape the Court's prior rulings simply by disavowing the labels that the Court used to describe categories of alleged misstatements.

Of the "12 sets" of these "NNA acquisition statements" (Opp. at 8), at least ten are repleaded from Plaintiffs' prior Complaint: SAC ¶¶ 30-34, 39-41, and 47-48. This also includes all but two of "the NNA acquisition statements that are now pled at ¶¶ 20-24,[4] 38-39, 41, 44, [and] 47," all of which Plaintiffs incorrectly assert "[t]he Opinion did not directly cite to or address." Opp. at 12 n.4. In fact, the Opinion cited and ruled upon the alleged misstatements contained in SAC ¶¶ 30-34, 39, 41, and 47 as part of its analysis. *See* App. A (Rows 1-8, 13, 16, 19-21); Opinion at 7-8, 10, 12, 26-44. The Opinion also cited and ruled upon the portions of the alleged misstatements contained in SAC ¶ 38 that were included in Plaintiffs' prior Complaint. *See* App. A (Rows 9, 11); Opinion at 9, 40-44.[5] The only alleged "NNA

---

[4] SAC ¶¶ 20-24 are background paragraphs and do not include any alleged misstatements. Defendants presume Plaintiffs intended to cite SAC ¶¶ 30-34.

[5] Moreover, even if the Opinion "did not directly cite to or address" those repleaded statements (which is demonstrably incorrect), the Court's stated approach was to "assess each category of allegedly false and misleading statements, and identify specific statements as examples, where necessary," without necessarily "examin[ing] each statement individually." *See* MTD at 13 n.8 (citing Opinion at 26 n.14, 44 n.21). Plaintiffs do not argue—let alone cite any authority suggesting—that such an approach is improper or has any effect on subsequent application of the law of the case doctrine.

acquisition statements" from the SAC that the Opinion did not cite and rule upon are portions of the misstatements contained in SAC ¶¶ 38 and 44 that were not included in Plaintiffs' prior Complaint, and those statements are inactionable for similar (and additional) reasons. *See supra* 6 & n. 5; MTD at 14-18.

As shown in the MTD, all the "NNA acquisition statements" asserted by Plaintiffs are clearly subject to dismissal under the Court's prior decision and the law of the case. Nevertheless, Plaintiffs inappropriately attempt to relitigate the Court's puffery and opinion rulings without identifying any "extraordinary circumstances" that might warrant revisiting those rulings.

*First*, Plaintiffs conflate what constitutes inactionable puffery with the general standard for materiality. Opp. at 12-16. Plaintiffs' reliance on *In re Adams Golf, Inc. Securities Litigation*, 381 F.3d 267 (3d Cir. 2004)–which is not a puffery case and says nothing about the standards for evaluating statements of corporate puffery—is misplaced. *See* MTD at 13-17; Opinion at 24, 41-44. The Court's puffery analysis correctly included a statement-specific determination of what constitutes corporate puffery, which is immaterial to investors even if the statements are about important topics. Opinion at 41-44; *see In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2012 WL 3779309, at *4-5 (D.N.J. Aug. 29, 2012) (citation omitted).

*Second*, Plaintiffs devote several pages to discussing statements of opinion that the Court already ruled are inactionable because Plaintiffs do not adequately

7

plead that these opinions were not honestly believed or sincerely held by the speakers. *See* Opp. at 16-18. Plaintiffs suggest that certain post-Class Period disclosures somehow "contradict" Defendants' Class Period statements and "demonstrate" that they "were not true" (Opp. at 17-18), but fail to explain how those post-Class Period statements shed any light on whether any of the opinions were not honestly believed or sincerely held by the speaker at the time. Nor do Plaintiffs muster any case law supporting this argument.

**Plaintiffs also fail to adequately plead falsity as to the "November 8, 2021 NNA result statements."** While the "NNA acquisition statements" are Plaintiffs' clear (and self-described) "focus[]" this time around (Opp. at 8), they also have repleaded "a set of statements on November 8, 2021 regarding the purported number of NNAs PayPal added in 3Q21 (13.3 million)," which they allege "were false and misleading because Defendants failed to disclose that it had already been discovered that their incentive programs had generated millions of illegitimately created accounts." *Id.* at 21-22 (citing SAC ¶¶ 46-47, 49). Again, the bulk of Plaintiffs' Opposition is devoted to rehashing the same arguments that the Court previously rejected, insisting that the Court's rulings are "wrong." Opp. at 22. But Plaintiffs offer no "extraordinary circumstances" that might warrant reconsidering those rulings. *See* MTD at 6-8. And in any event, Plaintiffs' allegations do not support the contention (repeated multiple times in their Opposition) that PayPal was already

8

aware of "millions" of illegitimate accounts by October 2021. At most, Plaintiffs allegations instead support that CW-3 had found "about a million" fake accounts by the time of an alleged October 2021 meeting (as this Court already has found). SAC ¶ 124; Opinion at 30.

### III. Plaintiffs Fail to Adequately Plead a Strong Inference of Scienter as to Each Defendant and Each Alleged Misstatement.

As shown in the MTD, Plaintiffs fail to adequately allege that any material information about PayPal's NNA growth was knowingly misrepresented to investors. MTD at 20-39.

**CW allegations**. Plaintiffs' reliance on their CW allegations to support an inference of scienter is sorely misplaced. Opp. at 28-31. In its Opinion, this Court fully addressed all the CW allegations with any relevance to what Defendants knew, and when, about NNA issues. Opinion at 26-44. And the Court correctly concluded, *inter alia*, that "[a]lthough multiple confidential witness[es] hypothecated that there *might have* or *would have* been occasions for Defendants to receive information that would render their statements false, none can point to a date, time, or location." *Id.* at 36 (citation omitted); *see* MTD at 22-23. Plaintiffs' attempt to relitigate the Court's conclusions, using the exact same CW allegations as in their first amended complaint, is barred by the law of the case. *Wu*, 738 F. Supp. 3d at 547 n.20.

**Motive and opportunity**. Plaintiffs also have failed to adequately allege that Defendants had any motive to commit the alleged fraud. *See* MTD at 25-32.

9

Plaintiffs initially assert that Defendants were motivated to meet the NNA guidance they had provided to the market and not disappoint investors. Opp. at 33. Plaintiffs cite only out-of-circuit decisions in support of this contention because it is black-letter law in the Third Circuit that these types of general corporate motives do not contribute to an inference of scienter. *See Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 279 (3d Cir. 2009) ("general corporate desire to retire debt and raise funds and obtain credit on favorable terms" cannot create inference of scienter).

Plaintiffs then argue that "the Individual Defendants were motivated to boost PayPal's stock price" to engage in suspicious and unusual insider trading. Opp. at 34-35. In fact, the stock sales made by the Individual Defendants during the Class Period were not suspicious or unusual at all. MTD at 25-29.

*First*, Plaintiffs do not dispute that all the Individual Defendants' trades were conducted pursuant to SEC Rule 10b5-1 trading plans as publicly disclosed in their Form 4 filings. Opp. at 35. As this Court recently has held, it is appropriate to review Form 4 filings for this information on a motion to dismiss and "[t]rades made under automatic trading plans are of minimal value in establishing an inference of scienter." *Dang v. Amarin Corp. plc*, 750 F. Supp. 3d 431, 481 (D.N.J. 2024 (Kirsch, J.) (alteration in original) (citations omitted). Plaintiffs' argument that the Court should ignore the existence of these trading plans is accordingly unavailing. Opp. at 35-36.

*Second*, Plaintiffs contend that the Court should *only* consider (a) the total proceeds from the Individual Defendants' stock sales, and (b) the percentage of the Individual Defendants' Class Period holdings that were sold in assessing the trading. Opp. at 34-37. Binding Third Circuit authority contradicts Plaintiffs' position. The Third Circuit has made it clear that if a defendant's trading remains consistent year-over-year and defendant retains a large percentage of his common stock holdings—as the Individual Defendants did here—the trading within the class period provides no inference of scienter. *Institutional Invs.*, 564 F.3d at 279; MTD at 26-29 (collecting cases).[6]

*Finally*, Plaintiffs' argument that the Court should ignore that (a) the Individual Defendants sold a *lower* percentage of the shares they received during the Class Period than the shares they received in the prior two years, and (b) their total stock holdings actually *increased* over the Class Period (Opp. at 37 n.17), is contradicted by courts that have considered similar fact patterns and found they undermine the existence of a motive. *See* MTD at 28 and n.21 (collecting cases). In contrast, there is no legal support for Plaintiffs' bald assertion that somehow an inference of scienter can be drawn from the fact that the Individual Defendants did

---

[6] Plaintiffs' reliance on the Third Circuit's pre-*Tellabs* decision in *In re Suprema Specialties, Inc. Securities Litigation*, 438 F.3d 256 (3d Cir. 2006) and lower court citations to that decision (Opp. at 34, 36) are misplaced. *Avaya* is a subsequent, and binding, decision. 564 F.3d at 279-80.

*not* make any open market purchases of PayPal stock during the Class Period. Opp. at 35. The absence of such trading is irrelevant. The only valid issue is whether actual stock trading by the Individual Defendants created a motive.[7]

**Statements and supposed admissions**. Plaintiffs argue that the mere fact that PayPal's senior management publicly discussed the Company's NNA growth and reviewed "robust analytics" about customers is sufficient to establish a strong inference of scienter. Opp. at 24-25, 31. Plaintiffs are wrong. As the Court already has held, critically absent is any well-pled allegation—through confidential witness statements or otherwise—that senior management knew, prior to the end of Q4 2021, about material issues related to minimally engaged or illegitimate accounts. Opinion at 33-37, 42-43; *see also Gross v. AT&T Inc.*, 2021 WL 9803956, at *8-10 (S.D.N.Y. Sept. 27, 2021) (allegations that "retention and promotion-based churn" issues related to subscriptions were being discussed at company insufficient to infer that management "had to see in the data evidence of widespread fraud").

Plaintiffs then pivot to statements made by the Individual Defendants *after* the Class Period and assert that these statements somehow show that the Individual

---

[7] In a footnote, Plaintiffs continue to assert that the Individual Defendants' performance-based compensation somehow provided them with a motive to commit fraud. Opp. at 37-38 n.18. As set forth in the MTD, however, courts in this district routinely reject that incentive compensation can create an inference of scienter, and in any event, the Individual Defendants received a *de minimis* amount of compensation as the result of NNA performance. MTD at 30-32. Plaintiffs fail to address any of these arguments.

12

Defendants made knowing misstatements *during* the Class Period. Opp. at 26-27. Plaintiffs cite no cases to support this novel theory, presumably because none exist. As shown in the MTD, this argument relies entirely on Plaintiffs taking innocuous statements about how PayPal used incentive campaigns to acquire and retain customers in 2021—a public marketing program that the Company fully disclosed— and then mischaracterizing the statements as supposed admissions that PayPal was "targeting" low-value customers likely to churn off its platform. MTD at 32-34. Plaintiffs' response in their Opposition is to keep up the charade. Notably, the Opposition states that Defendants told investors "they were changing PayPal's business strategy to stop 'throw[ing] marketing dollars at low-value subscribers coming in.'" Opp. at 26. The actual statement is "we're not going to throw marketing dollars at low-value subscribers coming in." SAC ¶ 55. The speaker clearly is referring to PayPal's going-forward strategy and says nothing about "stopping" the prior use of this tactic. MTD at 35 n. 26. The Court need go no further in rejecting Plaintiffs' "admissions" theory of scienter. MTD at 32-37 (citing cases).

**Core operations**. Plaintiffs allege that the fact that NNAs were important to PayPal "strengthens the inference that Defendants knew or had access to the true facts about the NNA acquisitions." Opp. at 32-33. It does not. Plaintiffs conveniently overlook that this Court recently has held that "'there must be other, individualized allegations that further suggest that the officer had knowledge of the fact in

13

question.'" *Dang*, 750 F. Supp. 3d at 477 (quoting *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 556 (D.N.J. 2010)). The complete absence of any such "individualized allegations" in the Complaint renders Plaintiffs' "core operations" theory moot. *Id.*

**Holistic analysis**. When the facts properly before the Court are reviewed holistically in conjunction with the determinations the Court made in dismissing the prior Complaint, the non-culpable explanation for Defendants' conduct is far stronger than any inference of fraud. MTD at 38-39. While PayPal "knew about certain risks associated with its promotions," there are no well-pled allegations suggesting that PayPal knew about the existence of a large number of fraudulent accounts or the need to change its business strategy for acquiring and retaining NNAs until it made a timely disclosure of those issues in conjunction with its 4Q2021 results. Opinion at 42-43. Plaintiffs' only response is to make two assertions that are belied by their own Complaints and the documents they rely upon.

*First*, Plaintiffs assert that PayPal failed to tell investors that they were using marketing incentives to acquire new customers and increase engagement and that this could lead to lower-value NNAs. Opp. at 9, 15, 17, 19, 26, 38-39. In fact, PayPal disclosed during the Class Period that (a) it was spending hundreds of millions of dollars on sales and marketing for customer acquisition and user engagement, (b) this spending had significantly increased as compared to the prior year, and (c) there

14

continued to be a strong need for the Company to reduce its account churn. First Am. Compl. ("FAC") MTD Ex. 2 at 36 (documenting $2.4 billion in 2021 marketing spending, a 33% year-over-year increase); FAC MTD Ex. 30 at 53 (marketing spend used for "increased user engagement"); MTD at 19-20 (churn disclosures).

*Second*, Plaintiffs assert that the "new business strategy Defendants claim they told investors in February 2022 was the same strategy that they misleadingly told investors they were pursuing in 2021." Opp. at 39. The February 2022 analyst reports cited by Plaintiffs, however, confirm that investors understood the Company had announced a strategy *change*, not merely the continuation of an old strategy. SAC ¶¶ 83-92 (JMP – "marketing pivot," BTIG – "new strategy," Barclays – "change of strategy," Raymond James – "strategic shift in focus," and J.P. Morgan – "pivoting towards an engagement strategy"). Plaintiffs do not, because they cannot, point to any contrary factual allegations.

Because Plaintiffs have failed to adequately allege a strong inference of scienter as to any of Defendants, the SAC must be dismissed.[8]

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully submit that the SAC should be dismissed in its entirety with prejudice.

---

[8] With respect to Plaintiffs' claims against the Individual Defendants under Sections 20(a) and 20A, the parties agree these claims should be dismissed if the Court finds no underlying securities law violation. Opp. at 40.

| | |
|---|---|
| */s/ Maureen T. Coghlan* | /s/ *Adam S. Hakki* |
| **ARCHER & GREINER, P.C.** | **ALLEN OVERY SHEARMAN STERLING US LLP** |
| Maureen T. Coghlan | Adam S. Hakki (*pro hac vice*) |
| 1025 Laurel Oak Road | 599 Lexington Avenue |
| Voorhees, NJ 08043 | New York, NY 10022 |
| Telephone: (856) 795-2121 | Telephone: (212) 848-4000 |
| Fax: (856) 795-0574 | adam.hakki@aoshearman.com |
| mcoghlan@archerlaw.com | |
| | Lyle Roberts (*pro hac vice*) |
| | George Anhang (*pro hac vice*) |
| | 1101 New York Avenue NW |
| | Washington, DC 20005 |
| | Telephone: (202) 683-3800 |
| | lyle.roberts@aoshearman.com |
| | george.anhang@aoshearman.com |

*Counsel for Defendants PayPal Holdings, Inc.,*
*Daniel Schulman, John Rainey, and Jonathan Auerbach*

Dated: August 20, 2025

16